# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERANDA GOLF INCORPORATED USA INC., <br><br> Plaintiff, <br><br> v. <br><br> GOLF GODS PTY LTD, <br><br> Defendants. | Civil Action No. 22-CV-01401-TMH |

## MEMORANDUM ORDER

Plaintiff Veranda Golf Incorporated USA Inc. d/b/a Uther Supply has sued Defendant Golf Gods Pty Ltd for copyright infringement. Pending before me are Defendant Golf Gods Pty Ltd's Opposed Motion to Transfer Venue to the U.S. District Court for the Middle District of Florida (D.I. 18) and Defendant Golf Gods Pty Ltd's Opposed Motion to Stay All Deadlines (D.I. 20). For the following reasons, I will deny the motions.

### I. BACKGROUND

Uther Supply is a Canadian corporation with its principal place of business in Ontario, Canada. D.I. 1 at ¶ 1. Golf Gods is an Australian Private Company with its principal place of business in South Australia, Australia. D.I. 1 at ¶ 2. Both companies sell golf-related accessories. Golf Gods sells products in the United States through a webstore hosted by Shopify. D.I. 19 at 3; D.I. 19-1 at ¶ 5. Golf Gods imports products into the United States in Bradenton, Florida, where they are stored, packed,

and shipped to Golf Gods' U.S. customers by a third-party contractor named Short Par 4 that handles order fulfillment for Golf Gods. D.I. 19-1 at ¶ 4.

Uther Supply believes that some of Golf Gods' products infringe Uther Supply's copyright. As a result, Uther Supply filed a Digital Millennium Copyright Act (DMCA) takedown notice with Shopify, and Shopify thereafter halted sales of Golf Gods' products. To restart sales of its products, Golf Gods filed a DMCA counter-notice. In order to file the counter-notice, Golf Gods had to "consent[] to venue and jurisdiction in Shopify's legal home in Delaware." D.I. 19 at 3; *see also* D.I. 19-1 at ¶ 5.

Uther Supply then sued Golf Gods in this District, *see* D.I. 1, and Golf Gods filed the instant motion to transfer under 28 U.S.C. § 1404(a) and a motion to stay until the resolution of its motion to transfer.

## II. LEGAL STANDARDS

### A. Motion to Transfer

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Golf Gods has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit has identified 12 interests "protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Six of those interests are private in nature and six are public in nature. *Id.* The Supreme Court, however, has limited the applicability of the private-interest factors when one or both of the parties has consented to jurisdiction and venue:

> [A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.
>
> . . .
>
> As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013) (citation omitted). In the Third Circuit, the six public-interest factors are

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80 (citations omitted).

### B. Motion to Stay

Whether or not to stay litigation is a matter left to the Court's discretion. *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).

### III. ANALYSIS

### A. Motion to Transfer

Golf Gods acknowledges that it consented to jurisdiction and venue in the District of Delaware. Golf Gods seeks to downplay the significance of its consent by asserting that its consent was "unnegotiated, jurisdictional consent in the language of a standard form Digital Millennium Copyright Act ("DMCA") counter-notice." D.I. 19 at 1. Golf Gods offers no explanation in its opening brief as to why the fact that consent was "unnegotiated" or part of a "standard form [DMCA] counter-notice" has any legal significance. And Golf Gods did not challenge the validity or enforceability of the DMCA's consent provision until its reply brief.

The validity and enforceability of the jurisdictional consent provision is critical to the transfer analysis. *See Atl. Marine Const.*, 571 U.S. at 64. As such, Golf Gods' argument that the consent provision is invalid and unenforceable could have and should have been raised in Golf Gods' opening brief. Because it was not, Golf Gods has forfeited the argument. *See McKesson Automation, Inc. v. Swisslog Italia S.p.A.*, 840 F. Supp. 2d 801, 803 n.2 (D. Del. 2012); *LG Display Co., Ltd. v. AU Optronics Corp.*, C.A. Nos. 06-726-LPS, 07-357-LPS, 2010 WL 5463305, at *4 (D. Del. Dec. 29, 2010); *see also* D. Del. LR 7.1.3(c)(2). The consent provision is thus presumed valid. *See QVC, Inc. v. Your Vitamins, Inc.*, 753 F. Supp. 2d 428, 432 (D. Del. 2010) ("Forum selection clauses are presumptively valid and are entitled to great weight.").

A valid forum selection clause applies to this dispute and, as a result, Golf Gods has waived any right to challenge Delaware as inconvenient or less convenient under the private-interest factors of the transfer analysis. *Atl. Marine Const.*, 571 U.S. at 64. The private-interest factors therefore weigh entirely against transfer.

Turning to the public-interest factors, this is not the rare case where the public-interest factors require transfer to a district other than the one consented to. *Id.*; *see also Jumara*, 55 F.3d at 880 (a party's agreement as to a proper forum is "entitled to substantial consideration"). Of the six public-interest factors, Golf Gods only argues that two factors—local interest and practical considerations—favor transfer. D.I. 19 at 4–5. Golf Gods concedes that the other four factors are, at best for Golf Gods, neutral. *See* D.I. 19 at 1 ("Factors not included in the argument are neutral or inapplicable to this matter.").

### 1. Local Interest

*Jumara* instructs me to consider whether "the local interest in deciding local controversies at home" supports transfer. 55 F.3d at 879. Golf Gods argues that "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." D.I. 19 at 4 (citing *Werner v. Hive Media Grp.*, LLC, No. 20-1176-LPS, 2021 WL 3662902, at *4 (D. Del. Aug. 18, 2021)). But in *Werner*, the sole case Golf Gods cites in support of its local interest argument, the case "involve[d] a dispute between a photographer who lives in California [(the transferee state)] and a company that has its headquarters in California and operates the relevant websites from California." *Werner*, 2021 WL

3662902, at *5. That is a far cry from this case, where neither party is incorporated, has its principal place of business, or operates in Florida.

Here, the only connection with the Middle District of Florida is that Golf Gods' allegedly infringing products are distributed from Bradenton, Florida by Short Par 4. There is no allegation, however, that Short Par 4 participated in the design, manufacture, promotion, or sales of Golf Gods' allegedly infringing products. It is difficult to perceive why Florida would have an interest in deciding an action that only tangentially relates to one of its corporations. This factor is thus neutral.

### 2. *Practical Considerations*

*Jumara* also instructs me to consider "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Although Golf Gods states that "[a] trial in the Middle District of Florida is likely to be more expeditious and inexpensive for the parties," it does not explain why the Middle District of Florida would be more expeditious. D.I. 19 at 4. As to cost, Golf Gods asserts that, "[l]itigating this case in the Middle District of Florida would eliminate the costs associated with local counsel in Delaware." D.I. 19 at 4. Golf Gods, however, does not suggest that the parties would not need to retain new local counsel in Florida or that counsel in Florida would be less expensive than counsel in Delaware. In fact, retaining and bringing up to speed new counsel when Delaware counsel is capable and already familiar with the case would likely *increase* the overall cost of the litigation. This factor therefore slightly weighs against transfer.

***

In sum, the six private-interest factors weigh entirely against transfer, one of the public-interest factors slightly weighs against transfer, and the remaining five public-interest factors are neutral. Golf Gods therefore has not shown that the *Jumara* factors strongly favor transfer. I will thus deny the motion to transfer.[1]

### B. Motion to Stay

Golf Gods requests that I "stay all proceedings in this case pending the decision of Defendant's Motion to Transfer Venue to the U.S. District Court for the Middle District of Florida." D.I. 21 at 1; *see also* D.I. 21 at 2 (arguing for a stay "until the Court decides" the transfer motion); D.I. 28 at 4 (same). Because I am denying the motion to transfer, Golf God's motion to stay is moot. I will therefore deny the motion to stay.

## IV. CONCLUSION

For the foregoing reasons, Golf Gods has not shown that transfer to the Middle District of Florida is warranted. And because the motion to transfer has been decided, there is no reason to grant a stay in this case.

---

[1] Uther Supply also argues that it was not clear at the time the suit was filed that the Middle District of Florida had personal jurisdiction over Golf Gods, a fact that—if true—would also require denial of the motion to transfer. *See* D.I. 25 at 9–12. Golf Gods argues the contrary. D.I. 19 at 5; D.I 30 at 4–5. While Uther Supply appears to have the better argument, I need not decide this issue given my conclusions regarding the consent provision and the public-interest *Jumara* factors.

**ACCORDINGLY**, on this 1st day of August 2023, **IT IS HEREBY ORDERED THAT**: Defendant Golf Gods Pty Ltd's Opposed Motion to Transfer Venue to the U.S. District Court for the Middle District of Florida (D.I. 18) is **DENIED** and Defendant Golf Gods Pty Ltd's Opposed Motion to Stay All Deadlines (D.I. 20) is **DENIED AS MOOT**.

                                                  /s/ Todd M. Hughes
                                                     Todd M. Hughes